FILED

MAY 1 0 2002

CLERK, U.S. DISTRICT COURT
STERN DISTRICT OF CALIFOR

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELAINE CHAO,

     Plaintiff,

     v.

LOCAL 442, UNITED ASSOCIATION
OF JOURNEYMEN AND APPRENTICES
OF THE PLUMBING AND PIPEFITTING
INDUSTRY OF THE UNITED STATES
AND CANADA, AFL-CIO,

     Defendant.

CIV-S-01-0874 DFL GGH

AMENDED MEMORANDUM of OPINION
and ORDER

Elaine Chao, the Secretary of Labor, U.S. Department of Labor ("Secretary"), filed suit against Local 442, United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO ("Local 442"), alleging that Local 442 violated election Bylaw 28(j) during its December 16, 2000 elections. The Secretary alleges that Ronald Hayes, a candidate for Business Agent, was engaged in electioneering and campaigning within 100 feet of the Local 442 polling place on the day of the election in violation

58

1

Bylaw § 28(j). The Secretary moves for summary judgment and seeks to have the court nullify the election results for Business Agent and order a new election. Local 442 also moves for summary judgment.

I.

A.    Local 442 and Election Rules

Local 442 was formed in December 1997 as a result of the consolidation of two predecessor unions, United Association Local 492 of Stockton and United Association Local 437 of Modesto. (Opp. at 2). In May 2000, Local 442 adopted its first set of Bylaws. (Defs.' Statement of Undisputed Facts "SUF" at ¶ 2). The Bylaws include detailed rules for conducting elections. The Bylaws provide for an Election Committee that is charged with "insur[ing] that the election is conducted fairly, equitably, and honestly." (Bylaws at § 27(a), Exh. B to Del Santo Decl.). The Election Committee is comprised of union members but the Bylaws forbid candidates from serving on the Committee. (Id. at § 27(d)). At an October 2000 meeting, the President of Local 442, Ronald Hayes, appointed Jerry Jackson, Scott Stearns, and Roger Vincelet to serve as the Election Committee. (Defs.' SUF at ¶ 5).

The Local 442 Bylaws also regulate campaigning and electioneering by candidates. Section 28(j) of the Bylaws states that: "No campaigning or electioneering shall be allowed inside the building where the election is conducted or closer than one hundred (100) feet from the entrance to the building." Although

2

they may not campaign or electioneer within one hundred feet of the polling place, candidates are permitted to have one observer present, and two observers present at the counting of ballots. (Id. at §§ 28(k), (l)). It appears that Hayes did not designate any observers. Any union member may make a charge against any other member for violating, or assisting in the violation of any election rule. (Id. at § 28)). Finally, the Bylaws have never been interpreted or applied prior to the December 16, 2000 election. The Bylaws do not specifically define "campaigning or electioneering," and neither of the predecessor unions had a similar election rule. (Fortner Decl. at ¶¶ 3, 5-11). No provision of federal law requires the 100 foot no "campaigning or electioneering" zone.

B.   December 16, 2000 Election

Local 442 held its first election on December 16, 2000. (Defs.' SUF at ¶ 9). The voting took place inside Local 442's meeting hall which is located behind the union's office area and in front of welding classrooms. (Id. at ¶ 7). The configuration of the Local 442 property is such that the whole of the property is within 100 feet of the entrance to the meeting hall, including the sidewalk in front of the meeting hall. (Id. at ¶ 8).

On the morning of December 16, 2000, the Election Committee met to review the election rules. Jackson expressed his intent that there be no disruptions or disturbances during the election. (Id. at ¶ 9). Voting began at approximately 10 a.m., and during the course of the day some 233 members voted for union officers.

3

(Id. at ¶ 11). Outside of the meeting hall, as many as 40 to 50 union members, including at least 15 of the 30 candidates, grouped together on the sidewalk and in the parking lot to visit and chat with one another. (Id. at ¶¶ 11, 12). Occasionally, the groups were too loud and one of the members of the Election Committee had to come out and tell the groups to disperse. (Id. at ¶ 12).

The first person to vote on the morning of December 16 was the then current President of Local 442, Ron Hayes, who was also a candidate for Business Manager. (Id. at ¶ 13). After he voted, Hayes decided to remain at the union property purportedly because he was concerned about the potential for voter intimidation based on reports or rumors he had heard about voter intimidation at past union elections. (Id.)[1] Hayes told Jackson that he intended to remain outside of the union hall during the polling, and Jackson did not object. (Id. at ¶ 14).

After he voted, Hayes spent a total of about one hour in his truck and most of the rest of the day at the edge of the driveway to the Local 442 property. (Pl.'s SUF at ¶¶ 13-15; Defs.' Resp. to Pl.'s SUF at ¶ 15). The layout of the property was such that members had to pass through the driveway, and hence by Hayes, in order to enter the polling place. (Id. at ¶ 16). Hayes greeted members as they entered and shook hands with them, ultimately speaking with approximately 111 of the 233 members who voted on

---

[1] Hayes described these rumors to Local 442's Business Manager, Larrell Fortner well over a year before the election, and Jackson had heard similar rumors too. (Defs.' SUF at ¶ 13).

4

December 16th. (Id. at ¶¶ 17-18). Although he knew that he was within 100 feet of the polling entrance, and a sign was posted that restated the electioneering and campaigning prohibition, Hayes considered that his activity was permissible because he was not campaigning. (Id. at ¶¶ 19-20). Hayes allegedly commented to at least two union members that they should "do the right thing." (Orihuela Depo. at 15; Rhynes Depo. at 13-14). However, Hayes denies having made these statements and notes that given the identities of the persons to whom they were made, his statements would have been understood as ironic comments. (Def.' Motion at 26-27). Hayes ultimately won the election by a narrow six vote margin. (Id. at ¶ 21). Although other candidates for the office of Business Agent were present during the day, none remained for as long as Hayes or in as prominent a position. (See Pl.'s Opp. at 3-4). Jackson and Stearns periodically went outside of the union hall during the day and reportedly did not see any activity which they considered in violation of the union rules. (Id. at ¶ 15). No complaints were filed with the Election Committee. (Id. at ¶ 17).

C.   Post-Election Complaint

On December 21, 2000, union members Jerrell Rhynes and David Van Steenberge, filed a protest with Local 442 concerning the December 16 election. (Defs.' SUF at ¶ 18). The complaint raised a number of issues, including Hayes' alleged violation of § 28(j). (Id.) The complaint was assigned to International Representative Jim Kellogg who conducted an investigation that

included telephone discussions and in person meetings with Jackson, Hayes, Fortner, Rhynes, and Van Steenberge, as well as a review of statements and documents provided by the parties. (Id. at ¶ 19). At Kellogg's January 12, 2001, meeting with the complainants, they stated that they had not personally witnessed Hayes campaigning at the election, and they were unable to provide the names of witnesses who had. (Id. at ¶ 20). Further, they indicated that they circulated a letter seeking members who had witnessed violations of the election rules but that none had come forward. (Id.) Kellogg issued a decision that rejected the complaint and found that there was no basis to the charge that Hayes had engaged in campaigning in violation of § 28(j). (Id. at ¶ 21).

Rhynes and Van Steenberge subsequently appealed Kellogg's decision to the UA General President who reviewed the complaint and Kellogg's decision. (Id. at ¶ 22). Like Kellogg, the General President concluded that there was no basis for concluding that Hayes had violated § 28(j). (Id.) Rhynes then filed a complaint with the Secretary of Labor who conducted an investigation and concluded that Hayes's conduct was contrary to § 28(j) and that Local 442 had violated 29 U.S.C. § 481(e).[2] The Secretary now moves for summary judgment against Local 442. The sole issue before the court is whether Hayes' conduct constituted

---

[2] Section 481(e) states: "The election shall be conducted in accordance with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this subchapter."

"electioneering or campaigning" in violation of § 28(j) of the Local 442 Bylaws so as to require the nullification of the December 16, 2000 election for Business Agent.

II.

The special function of Title IV of the Labor Management Relations Disclosure Act ("LMRDA"), 29 U.S.C. §§ 481-483, is to "insure 'free and democratic' elections" for unions. Wirtz v. Hotel, Motel and Club Employees Union, Local 6, 391 U.S. 492, 496 (1968). In achieving this goal, Congress gave unions considerable leeway to conduct their affairs without undue intervention from the Secretary of Labor or the courts. Id. The Act requires unions to ensure that their elections are fair, 29 U.S.C. § 481(c), and that they are conducted in accordance with the union's constitution and bylaws. 29 U.S.C. § 481(e). The Secretary's complaint in this case is based on her contention that Local 442 did not conduct its election for Business Agent in accordance with § 28(j) of its Bylaws. The Secretary must prove her case by a preponderance of the evidence. Reich v. Local 89, Laborers' Int'l Union, 36 F.3d 1470 (9th Cir. 1994).

Because "courts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution," the defendant's finding that Hayes' conduct did not violate the no electioneering or campaigning rules should be upheld unless the defendant's "interpretation [of § 28(j)] was patently unreasonable." Stelling v. Intern. Broth. of Elec. Workers, 587 F.2d 1379, 1388, 1389 (9th Cir. 1978). In Stelling,

7

the Ninth Circuit applied the "patently unreasonable" standard and upheld a union's interpretation of its own constitution. The court observed that the constitution was "ambiguous," but still concluded that the district court was not clearly erroneous in finding that the union's interpretation was reasonable. (Id. at 1389). Judicial deference to a union's reasonable interpretation of its own constitution or bylaws is well-established and applied widely across the circuits. (See e.g. Local No. 48, United Broth. of Carpenters and Joiners v. United Brotherhood of Carpenters and Joiners, 920 F.2d 1047 (1st Cir. 1990) ("Conscious of the value of non-interference, we align ourselves squarely with those courts that have said judges should refrain from second-guessing labor organizations in respect to plausible interpretations of union constitutions."); Newell v. International Broth. of Electrical Workers, 789 F.2d 1186, 1189 (5th Cir. 1986) (union's interpretation of own constitution upheld unless "patently unreasonable"); Local 334 v. United Ass'n of Journeymen, 669 F.2d 129, 131 (3d Cir. 1982) (same)).

Here, the union's interpretation of its own Bylaw is not patently unreasonable. Hayes allegedly violated § 28(j) by remaining within the 100 foot perimeter for the duration of the polling, meeting and shaking hands with close to one half of the voting members, conversing with union members, and commenting to two members that they should "do the right thing." However, there are no allegations that Hayes asked union members to vote for him. In the absence of such evidence, the union's position

that Hayes was not engaged in campaigning or electioneering and, therefore, did not violate § 28(j) is reasonable, if not ineluctable. Thus, while Hayes' conduct could be viewed as a form of campaigning and could fit linguistically within the term, the contrary view is also reasonable. Further, the defendant argues that a contrary holding would effectively modify § 28(j) into a rule that simply bars all candidates from being within the 100 foot perimeter on the day of the election, or at the very least, bars candidates from talking with union members within the prescribed perimeter. But the rule does not say this, and the union should have the latitude to adopt an interpretation of the rule that avoids so restrictive an outcome given that the union was not required to have a bylaw that puts any special restrictions on campaigning outside the polls in the first place.

The Secretary argues that the defendant's interpretation of § 28(j) is patently unreasonable. The Secretary's argument is based primarily on several court decisions and NLRB rulings holding that the presence of a candidate or his agent at a polling place may permit the NLRB to invalidate a union election. See Nathan Katz Realty, LLC v. NLRB, 251 F.3d 981, 991 (D.C. Cir. 2001); Overnite Transportation Co. v. NLRB, 140 F.3d 259 (D.C. Cir. 1998); Electric Hose & Rubber Co. v. NLRB, 262 NLRB 186 (1982); Performance Measurements Co. v. NLRB, 148 NLRB 1657 (1964). However, as the defendant points out, these decisions are inapposite because they involve elections to determine if employees will be represented by a union. In such union

representation elections, the NLRB applies a heightened standard known as the "laboratory conditions" doctrine.[3]

In contrast to the stringent NLRB oversight of union representation elections, unions are given considerable freedom and latitude in conducting elections under Title IV of the LMRDA which reflects Congress' goal that "unions should be left free to 'operate their own affairs, as far as possible.'" United Steelworkers of America v. Sadlowski, 457 U.S. 102, 117 (1982). Thus, while the laboratory conditions doctrine may condemn a union representation election for relatively minor infractions, courts should defer to a union's conclusion that a Title IV LMRDA election was conducted consistently with its Bylaws, particularly when the Bylaw in question is not otherwise required by federal law. For these reasons, the more stringent standard in the union representation cases does not apply to this election.

The Secretary's remaining arguments also do not persuade. First, the Secretary argues that Hayes' justification for his presence within the 100 foot perimeter--that he wanted to supervise what was taking place to ensure that the election was fair--fails because it was the job of the candidate-appointed election observers to ensures that the elections were conducted

---

[3] The doctrine is stated in Gen. Shoe Corp: "In election proceedings, it is the Board's function to provide a laboratory in which an experiment may be conducted, under conditions as nearly ideal as possible, to determine the uninhibited desires of the employees. It is our duty to establish these conditions; it is also our duty to determine whether they have been fulfilled." 77 NLRB 124 (1948).

fairly. However, as long as he was not specifically campaigning or electioneering, Hayes' justification for remaining within the perimeter is immaterial. Second, the Secretary argues that the other candidates for Business Agent who were present on December 16, were not present for an "extended period of visiting" like Hayes.[4] (Pl.'s Opp. at 3). However, the Secretary concedes that some other candidates were present during the course of the day and that some conversed with union members. Under the Secretary's construction of § 28(j), this type of conduct would also be prohibited, creating a rule that could prohibit candidates from staying in the vicinity of the polls for any length of time.

III.

For the foregoing reasons, the Secretary's motion for summary judgment is DENIED and the defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated: _10 May 2002_ .

_____
DAVID F. LEVI
United States District Judge

---

[4] The Secretary notes that Patrick Griffen, a candidate for the Executive Board was only present for about thirty or forty minutes, including the amount of time it took for him to bring a retired member to vote and to cast his own ballot. While he was present, Griffen also spoke to several members within the 100 foot perimeter. (Pl.'s Opp. at 4).

11

United States District Court
for the
Eastern District of California
May 10, 2002

* * CERTIFICATE OF SERVICE * *

2:01-cv-00874

Chao

v.

Local 442

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on  May 10, 2002, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

Adisa-Mari Abudu-Davis            HV/DFL
United States Attorney
501 I Street                      VC/GGH
Suite 10-100
Sacramento, CA   95814

Isabella Marie Del Santo
United States Department of Labor
Office of the Solicitor
71 Stevenson Street
Suite 1110
San Francisco, CA   94105

Raphael Shannon
McCarthy Johnson and Miller
595 Market Street
Suite 2200
San Francisco, CA   94105

Sally M Tedrow
PRO HAC VICE
O'Donoghue and O'Donoghue
4748 Wisconsin Avenue Northwest
Washington, DC   20016

Daniel J McNeil

PRO HAC VICE
O'Donoghue and O'Donoghue
4748 Wisconsin Avenue Northwest
Washington, DC  20016

Jack L. Wagner, Clerk

BY: _____
Deputy Clerk